BENNETT AND KAHNWEILER, INC., Plaintiff-Appellee, v. AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee, *et al.*, Defendants-Appellants.

First District (6th Division) No. 1—92—0206

Opinion filed November 19, 1993.

Sonnenschein, Nath & Rosenthal, of Chicago (Frederic S. Lane and Jonathan B. Piper, of counsel), for appellants.

Katz, Randall & Weinberg, of Chicago (Warren Lupel and Barry A. Erlich, of counsel), for appellee.

JUSTICE GIANNIS delivered the opinion of the court:

This appeal arises from an action brought by plaintiff to recover a commission under a real estate brokerage agreement for the lease of commercial property owned by defendants. In this appeal, defendants challenge the trial court's denial of their request for the imposition of sanctions and for an award of attorney fees under Supreme Court Rule 137 (134 Ill. 2d R. 137).

Plaintiff, Bennett & Kahnweiler, Inc., brought this action seeking a judgment for a real estate broker's commission allegedly earned pursuant to a contract for the lease of commercial property owned by defendants. In its amended complaint, plaintiff alleged that it had been retained by the law firm of Schwartz Cooper Kolb & Gaynor, Chartered (Schwartz Cooper) to obtain office space for the law firm in a building in Chicago. Plaintiff alleged further that the property owner and Schwartz Cooper had orally agreed upon mutually satisfactory lease terms for certain space in defendants' building. In response to a request for a bill of particulars filed by defendants, plaintiff alleged the oral agreement as to lease terms had been entered into by the attorney acting on behalf of Schwartz Cooper and counsel for the property owner. Following a bench trial, the circuit circuit court entered judgment in favor of defendants, finding that plaintiff was not entitled to the commission provided for in the contract because a written lease agreement had not been fully executed. This court affirmed the judgment for defendants. *Bennett & Kahnweiler, Inc. v. American National Bank & Trust Co.* (1992), 235 Ill. App. 3d 896, 601 N.E.2d 810.

After the trial court ruled in their favor, defendants filed a motion for sanctions and for an award of attorney fees under Supreme Court Rule 137 (134 Ill. 2d R. 137), asserting that plaintiff made allegations that were not well grounded in fact or made upon reasonable inquiry. This motion was denied by the trial court, and

defendants appeal, claiming that the court abused its discretion in refusing their request for sanctions and fees.

The record reveals that in the fall of 1986, plaintiff began negotiating with defendants, trustees of two land trusts, for office space in a building owned by defendants. The lease negotiations were conducted by Jerry K. Bloomstrand on behalf of the property owner. Richard Berger and Barbara Ellis acted on behalf of plaintiff and as agents for Schwartz Cooper.

In a letter dated September 22, 1986, Bloomstrand outlined the essential lease terms that were acceptable to the property owner, but these terms were not accepted by Schwartz Cooper. In a letter dated October 6, 1986, Bloomstrand restated the basic terms that were acceptable to the property owner and agreed to modify certain specific terms. Thereafter, the property owners employed Patrick Moran, of Sonnenschein Carlin Nath & Rosenthal, as counsel. Moran was assisted by Valerie B. Jarrett, an associate at the Sonnenschein firm. Schwartz Cooper retained Neil T. Neumark of Greenberger Krause & Jacobs to act as counsel on its behalf.

Numerous drafts of the proposed lease were exchanged by counsel for the parties between October 1986 and February 1987, and several meetings and telephone conferences were conducted during the course of the lease negotiations. On November 24, 1986, Bloomstrand sent Berger a revised broker's agreement which provided that defendants would pay plaintiff a brokerage commission "if a mutually satisfactory lease [was] negotiated and fully executed." This agreement was signed by Berger on December 5, 1986.

In February 1987, the final draft of the lease was prepared. This draft included a paragraph that stated that submission of the lease did not bind the property owner, and no lease or obligation would arise until the instrument was signed by the property owner and by the tenant and delivery was made to each.

On February 23, 1987, counsel for the property owner sent four "execution copies" of the final lease draft to the attorney for Schwartz Cooper. The cover letter that was sent with these documents requested that all four copies of the lease be signed and returned to Bloomstrand. Schwartz Cooper signed and returned the four copies of the lease agreement to Bloomstrand.

In late February 1987, an existing tenant in the building expressed interest in expanding into the office space that was the subject of the lease negotiations. In March 1987, the property owners decided to lease the space to that firm rather than to Schwartz Cooper. Thereafter, plaintiff sent an invoice to the property owners in the amount of $184,793.92 for the brokerage commission under the

lease agreement that had been negotiated on behalf of Schwartz Cooper.

At trial, the plaintiff called Richard Berger, one of the owners of the plaintiff corporation, who testified that the lease negotiations terminated with the submission of four execution copies of the lease for Schwartz Cooper's signature.

Neil T. Neumark, counsel for Schwartz Cooper, testified that he received the original lease proposal covering only the basic economic terms of the lease and that it was customary for some of the terms contained in the proposal letter to be clarified or modified later. Neumark recalled Moran telling him during the lease negotiations that he checked with the property owner about certain proposals that were made to him. Neumark testified he believed that Bloomstrand represented the owner. Neumark stated further that he discussed changes or proposed changes of the lease with Moran. Although Neumark negotiated the legal terminology in the lease with Moran, they did not negotiate the economic terms of the transaction. Neumark stated that he believed the final draft of the lease document accurately reflected the agreement of the parties.

Neumark testified that along with a letter dated February 23, 1987, he received four execution copies of the lease with instructions to have all four execution copies of the document signed and returned to Bloomstrand. Neumark testified that the words "four execution copies of the lease" have a customary meaning in lease negotiations and that these documents were ready for signature by the parties. Neumark testified that, contrary to previous correspondence, the letter of February 23, 1987, contained no qualifying language and did not indicate that it was subject to the property owner's approval.

Neumark stated that after he reviewed the final draft of the lease, he sent the copies to Schwartz Cooper and that Schwartz Cooper then signed the documents. Neumark indicated that although he had previously received five or six drafts of the lease, this was the only time that he received four copies for execution. Neumark believed that when he received the four execution copies, all of the lease provisions had been agreed upon by the principals and there were no other terms left to negotiate. Neumark stated further that he did not recall anyone ever telling him that there was some unacceptable item or term in the lease that precluded the property owner from signing the document. Neumark acknowledged, however, that it was customary that a commission would not be paid to a tenant's broker unless the lease was fully executed.

Patrick Moran, the attorney for the property owner, stated that as the negotiations with Schwartz Cooper progressed and the issues

became more finite, he simultaneously sent copies of the lease drafts to Neumark and to Bloomstrand in order to keep the process moving. Moran stated that he did not send out any drafts which included new business or financial terms without having consulted with either Bloomstrand or another representative of the property owner. According to Moran, telephone conferences and meetings were conducted to aid the conclusion of the lease negotiations and to enable the principals to agree on the language of the proposed lease. Moran testified that he was sure that he spoke with Bloomstrand before he sent the execution copies out and that Bloomstrand knew that the execution copies had been sent to Neumark.

Jerry Bloomstrand, the representative of the property owner, stated that when the lease negotiations ended, he was not aware of any terms in the lease signed by Schwartz Cooper that were unsatisfactory to the property owner.

Testifying for the defendants, Douglas Kramer stated that he was the only person with the authority to accept or reject lease terms, and the representative of the property owner who was involved in the lease negotiations had no such authority. Kramer stated further that the lease signed by Schwartz Cooper was never presented to him for his signature. Kramer admitted, however, that he was periodically advised of the progress of the negotiations with Schwartz Cooper, and he knew that Bloomstrand was negotiating basic economic terms which were reviewed by Kramer as they were discussed. Kramer stated that he participated in the discussions of the business terms for every lease transaction at the building.

Upon consideration of the evidence presented, the trial judge concluded that defendants were not liable for the commission because a mutually satisfactory lease had not been fully executed as specifically required by the revised broker's agreement. After the trial court entered judgment in their favor, defendants moved for imposition of sanctions and for an award of attorney fees under Supreme Court Rule 137. This motion was denied by the trial court, and defendants have appealed.

We hold that the trial court did not abuse its discretion in denying the request for sanctions and attorney fees.

■ Supreme Court Rule 137 allows a court to impose sanctions against a party or counsel who files a pleading or motion which is not well grounded in fact, is not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, or is interposed for any improper purpose. (134 Ill. 2d R. 137.) Because this rule is penal in nature, it must be strictly construed. (*In re Estate of Wernick* (1989), 127 Ill. 2d 61, 77, 535 N.E.2d 876; *Cha-*

*braja v. Avis Rent A Car System, Inc.* (1989), 192 Ill. App. 3d 1074, 1080, 549 N.E.2d 872.) The standard for evaluating a party's conduct under this rule is one of reasonableness under the circumstances existing at the time of the filing. (*Lewy v. Koeckritz International, Inc.* (1991), 211 Ill. App. 3d 330, 334, 570 N.E.2d 361; *Couri v. Korn* (1990), 202 Ill. App. 3d 848, 855, 560 N.E.2d 379.) The purpose of Rule 137 is not to penalize litigants merely because they were not successful in the litigation (*Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 621-22, 532 N.E.2d 595), and sanctions are not warranted simply because the facts ultimately determined are adverse to those set forth in the pleadings (*Schnack v. Crumley* (1982), 103 Ill. App. 3d 1000, 1005, 431 N.E.2d 1364). The party requesting sanctions is obligated to show that the opposing party made assertions of fact that were untrue and were made without reasonable cause. (*In re Estate of Wernick*, 127 Ill. 2d at 77; *Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342, 366, 383 N.E.2d 185; *Couri*, 202 Ill. App. 3d at 855.) The determination of whether to impose sanctions or to award attorney fees rests within the sound discretion of the trial court, and that decision is entitled to great weight and will not be disturbed on review absent an abuse of discretion. *In re Estate of Wernick*, 127 Ill. 2d at 77-78; *Whiting Corp. v. Professional Employment, Inc.* (1989), 186 Ill. App. 3d 705, 714, 542 N.E.2d 829; *Embassy/Main Auto Leasing Co. v. C.A.R. Leasing, Inc.* (1987), 155 Ill. App. 3d 427, 434, 508 N.E.2d 331.

■ Defendants' motion was predicated upon their claim that plaintiff made two allegations that were not well grounded in fact or were made without reasonable cause. Specifically, defendants claim that plaintiff improperly alleged in its amended complaint that Schwartz Cooper and the property owner orally agreed upon mutually satisfactory lease terms for space in the subject building in January 1987. Defendants also claim that, in response to the request for a bill of particulars, plaintiff improperly alleged that between January 26 and 28, 1987, Neil Neumark, on behalf of Schwartz Cooper, entered into an oral agreement with Pat Moran or Valerie Jarrett, acting on behalf of the owner, and that the terms of this agreement were reflected in the written lease that was signed by Schwartz Cooper in February 1987. We hold that, when examined under the circumstances existing at the time these allegations were made (*Lewy*, 211 Ill. App. 3d at 334; *Couri*, 202 Ill. App. 3d at 855), plaintiff's conduct was not so unreasonable as to warrant imposition of sanctions and an award of attorney fees.

It is undisputed that Schwartz Cooper signed the final draft of the lease that was prepared by the property owner's attorney and

that reflected terms and provisions that had been approved by the property owner. The testimony of Berger, Moran, Neumark, and Bloomstrand indicated that this final draft memorialized the provisions that were acceptable to both parties, and there was nothing left to negotiate. Consequently, it was not unreasonable for plaintiff to have asserted that an oral agreement had been reached and that it had earned its commission when Schwartz Cooper signed the lease. See *Harry F. Chaddick Realty, Inc. v. Maisel* (7th Cir. 1985), 762 F.2d 534, 537-38; *Chiagouris v. Continental Trailways* (1964), 50 Ill. App. 2d 196, 206, 200 N.E.2d 399; *Levit v. Bowers* (1954), 2 Ill. App. 2d 343, 350-51, 119 N.E.2d 536; *Goldstein v. Rosenberg* (1947), 331 Ill. App. 374, 375, 73 N.E.2d 171.

Although plaintiff was unsuccessful in proving its entitlement to the broker's commission, defendants have not established that plaintiff's cause of action was frivolous or was not well grounded in fact. (See *Prevendar v. Thonn* (1988), 166 Ill. App. 3d 30, 41, 518 N.E.2d 1374.) Because the record does not support defendants' claim that plaintiff made allegations of fact without reasonable cause, the trial court properly denied the motion for sanctions and attorney fees under Rule 137.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA, P.J., and EGAN, J., concur.